CLARE E. CONNORS #7936
United States Attorney
District of Hawaii

KENNETH M. SORENSON
Chief, Criminal Division

WAYNE A. MYERS
W. KEAUPUNI AKINA #11565
Assistant U.S. Attorneys
Room 6100, PJKK Federal Building
300 Ala Moana Blvd.
Honolulu, Hawaii   96850
Telephone:  (808) 541-2850
Facsimile:  (808) 541-2958
Email:      Wayne.Myers@usdoj.gov
            KeAupuni.Akina@usdoj.gov

```
FILED IN THE
UNITED STATES DISTRICT COURT
   DISTRICT OF HAWAII
     Sep 12, 2023
 Lucy H. Carrillo, Clerk of Court
```

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| UNITED STATES OF AMERICA, | ) CR. NO. 1:22-CR-00106-JAO |
|---|---|
| Plaintiff, | ) |
| | ) MEMORANDUM OF PLEA |
| | ) AGREEMENT |
| vs. | ) |
| | ) DATE: |
| JASON FREDERICO,              (06) | ) TIME: |
| | ) JUDGE: |
| Defendant. | ) |
| | ) |
| | ) |

## MEMORANDUM OF PLEA AGREEMENT

Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the

UNITED STATES OF AMERICA, by its attorney, the United States Attorney for

the District of Hawaii, and the defendant, JASON FREDERICO, and his attorney, Gary Singh, Esq., have agreed upon the following:

## THE CHARGES

1. The defendant acknowledges that he has been charged in the Indictment with violating 18 U.S.C. § 1951(a) [Conspiracy to Interfere with Commerce by Robbery; Count 8].

2. The defendant has read the charges against him contained in the Indictment, and those charges have been fully explained to him by his attorney.

3. The defendant fully understands the nature and elements of the crime with which he has been charged.

## THE AGREEMENT

4. The defendant will enter a voluntary plea of guilty to Count 8 of the Indictment [Conspiracy to Interfere with Commerce by Robbery; Count 8]. In return, the government agrees not to file charges against the defendant for conspiracy to possess with intent to distribute a controlled substance or federal firearm offenses arising from the conduct described in Count 8 of the Indictment and this Memorandum of Plea Agreement.

5. The defendant agrees that this Memorandum of Plea Agreement shall be filed and become part of the record in this case.

2

6. The defendant enters this plea because he is in fact guilty of Count 8 [Conspiracy to Interfere with Commerce by Robbery] in violation of 18 U.S.C. § 1951(a) and he agrees that this plea is voluntary and not the result of force or threats.

## PENALTIES

7. The defendant understands that the penalties for the offenses to which he is pleading guilty include:

    a. A term of imprisonment of up to 20 years, a fine of up to $250,000, plus a term of supervised release of up to three years.

    b. In addition, the Court must impose a $100 special assessment as to each count to which the defendant is pleading guilty. The defendant agrees to pay $100 for each count to which he is pleading guilty to the District Court's Clerk's Office, to be credited to said special assessments, before the commencement of any portion of sentencing. The defendant acknowledges that failure to make such full advance payment in a form and manner acceptable to the prosecution will allow, though not require, the prosecution to withdraw from this Agreement at its option.

## FACTUAL STIPULATIONS

8. The defendant admits the following facts and agrees that they are not a detailed recitation, but merely an outline of what happened in relation to the charge to which the defendant is pleading guilty:

   a. As alleged in the Indictment, the defendant had a criminal agreement with Keliikoa Kaimana Foster Young ("Foster Young"), and others, to rob a third party ("Victim A") of marijuana, currency, and other property.

   b. In furtherance of that agreement, between on or about June 29, 2021 and July 1, 2021, while in the District of Hawaii, the defendant (using a telephone number ending *9081) and Foster Young exchanged telephone calls and text messages to coordinate the robbery of Victim A. For example, on July 1, 2021, the defendant called Foster-Young and said he had talked to "the main guy" (i.e., Victim A) and made arrangements to purchase four pounds of marijuana from Victim A. Over a series of ensuing text messages and telephone calls on July 1, 2021, the defendant and Foster-Young agreed that the defendant would ask Victim A to sell a larger quantity of marijuana in a hand-to-hand transaction. The defendant and Foster-Young agreed that they would meet Victim A in person, show Victim A $20,000 in fake money, and then threaten (and if necessary, use) force to steal the marijuana from Victim A. The defendant and Foster-Young also

4

agreed that they would threaten (and if necessary, use) force to escort Victim A to Victim A's residence and steal additional marijuana, currency, and other property from Victim's A residence in the presence of Victim A.   For example, during a lawfully-intercepted telephone conversation on July 1, 2021, Foster-Young told the defendant, "I got the perfect idea, tell [Victim A] to meet us, meet us for that when you get it . . . I'm going to take his keys and we're going to go to his house right after that . . . we do it, we take his keys, he can't go nowhere, we have an hour to go to his house."   In response to concerns from the defendant that Victim A might resist or flee, Foster-Young told the defendant, "how is he going to do that, I going take his phone, I going take everything."   The defendant responded, "yeah . . . like he's not going to run somewhere and call somebody somehow one way or another."   Foster-Young responded, "I got this, just call him and try see if . . . he can come with the six and the one."   The defendant agreed and said he would figure it out, that Victim A was "hungry for money" and "who knows what's in [Victim A's] safe, probably a bunch of money, but I know that he probably got choke cash on him, brah."   Foster-Young told the defendant to call when he returned to Sunset Beach because "I wanna talk to you in person, I don't want to talk on the phone."

   c. Later on July 1, 2021, the defendant, Foster-Young, and others agreed to rendezvous in Haleiwa, Hawaii to carry out the robbery.  The defendant sent a text message to Foster-Young stating, "[m]ight as well I pick you up because we're going to roll up in the same car anyway."  During a series of telephone calls and texts between 9:26 p.m. and 10:21 p.m., the defendant told Foster-Young that Victim A had agreed to meet at the bathrooms at the Haleiwa Boat Harbor to conduct the hand-to-hand transaction and was on his way there with the marijuana. The defendant and Foster-Young then agreed to meet at the Haleiwa Joe's restaurant in Haleiwa, where they would get into the same vehicle and drive to the Haleiwa Boat Harbor to rob Victim A.  At the end of the conversation, the defendant told Foster-Young, "it's all good . . . fucking, let's just do this and everything's good" to which Foster-Young responded, "yeah" and "meet me at Haleiwa Joe's."  At 10:32 p.m., Foster-Young spoke via telephone with two other men he had recruited to assist with the robbery of Victim A, telling one, "I stay at Joe's waiting for you guys, just about there," and another, "waiting for you guys over here, I stay over here."

   d. Moments later, law enforcement officers with the Honolulu Police Department arrived on scene at the Haleiwa Joe's restaurant in Haleiwa. There, law enforcement officers encountered Foster-Young on foot and took him

6

into custody on the strength of several outstanding state arrest warrants.  Law enforcement officers also encountered the defendant standing outside a Chevrolet sedan at the Haleiwa Joe's restaurant.  The defendant identified himself by name, provided his correct date of birth, and confirmed he was the user of the telephone number ending *9081.  The defendant admits that he was at the Haleiwa Joe's at that time to meet up with Foster-Young and then rob Victim A.

    e. Minutes after being arrested, Foster-Young used his cellular telephone to communicate with the defendant, texting him, "call u wen [sic] I get out" and "I still want to do it" to which the defendant replied, "wtf."  Foster-Young then texted the defendant, "tell the guy hold on that I got arrested I going bail out fast" and "wait for my call they the guy wait for me."  The defendant responded, "hope u don't think I set u up or something."  Foster-Young replied, "just tell the guy wait."  At approximately 12:11 a.m. on July 2, 2021, after being released from jail, Foster-Young called the defendant and asked, "what about your friend?" to which the defendant replied, "brah, he fucking, I'll talk to you when I see you."  During a telephone call to a third party at 1:05 a.m. on July 2, 2021, Foster-Young told the third party, "everything's all good . . . they went and pulled us over because fucking numb nuts kept fucking driving back and forth."

   f. The defendant agrees that the attempted robbery of Victim A would have affected interstate commerce, in that it would have affected the market for marijuana, commerce over which the United States has jurisdiction.  *See generally Taylor v. United States*, 579 U.S. 301, 309 (2016).

  9. The parties agree that the charge to which the defendant is pleading guilty adequately reflects the seriousness of the actual offense behavior and that accepting this Agreement will not undermine the statutory purposes of sentencing.

**SENTENCING STIPULATIONS**

  10. Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the government agrees to recommend a term of imprisonment at the low end of the Sentencing Guideline range as determined by the Court.

  11. Pursuant to CrimLR 32.1(a) of the Local Rules of the United States District Court for the District of Hawaii and Section 6Bl.4 of the Sentencing Guidelines, the parties stipulate to the following for the purpose of the sentencing of the defendant in connection with this matter:

   a. The parties agree that, under U.S.S.G. § 2B3.1(a), the defendant's base offense level is 20.

   b. As of the date of this agreement, it is expected that the defendant will enter a plea of guilty prior to the commencement of trial, will

truthfully admit his involvement in the offense and related conduct, and will not engage in conduct that is inconsistent with such acceptance of responsibility. If all of these events occur, and the defendant's acceptance of responsibility continues through the date of sentencing, a downward adjustment of 2 levels for acceptance of responsibility will be appropriate. *See* U.S.S.G. § 3E1.1(a) and Application Note 3.

    c. The United States Attorney agrees that the defendant's agreement herein to enter into a guilty plea constitutes notice of intent to plead guilty in a timely manner, so as to permit the government to avoid preparing for trial as to the defendant. Accordingly, the United States Attorney anticipates moving in the Government's Sentencing Statement for a one-level reduction in sentencing offense level pursuant to Guideline § 3E1.1(b), if the defendant is otherwise eligible. The defendant understands that notwithstanding its present intentions, and still within the Agreement, the prosecution reserves the rights (1) to argue to the contrary in the event of receipt of new information relating to those issues, and (2) to call and examine witnesses on those issues in the event that either the United States Probation Office finds to the contrary of the prosecution's intentions or the Court requests that evidence be presented on those issues.

12. The parties agree that notwithstanding the parties' Agreement herein, the Court is not bound by any stipulation entered into by the parties but may, with the aid of the presentence report, determine the facts relevant to sentencing. The parties understand that the Court's rejection of any stipulation between the parties does not constitute a refusal to accept this Agreement since the Court is expressly not bound by stipulations between the parties.

13. The parties represent that as of the date of this agreement there are no material facts in dispute.

## APPEAL/COLLATERAL REVIEW

14. The defendant is aware that he has the right to appeal his conviction and the sentence imposed. The defendant knowingly and voluntarily waives the right to appeal, except as indicated in subparagraph "b" below, his conviction and any sentence within the Guidelines range as determined by the Court at the time of sentencing, and any lawful restitution or forfeiture order imposed, or the manner in which the sentence, restitution, or forfeiture order was determined, on any ground whatsoever, in exchange for the concessions made by the prosecution in this Agreement. The defendant understands that this waiver includes the right to assert any and all legally waivable claims.

      a.      The defendant also waives the right to challenge his conviction or sentence or the manner in which it was determined in any collateral attack, including, but not limited to, a motion brought under 28 U.S.C. § 2255, except that the defendant may make such a challenge (1) as indicated in subparagraph "b" below, or (2) based on a claim of ineffective assistance of counsel.

      b.      If the Court imposes a sentence greater than specified in the guideline range determined by the Court to be applicable to the defendant, the defendant retains the right to appeal the portion of his sentence greater than specified in that guideline range and the manner in which that portion was determined and to challenge that portion of his sentence in a collateral attack.

      c.      The prosecution retains its right to appeal the sentence and the manner in which it was determined on any of the grounds stated in 18 U.S.C. § 3742(b).

## FINANCIAL DISCLOSURE

15.    In connection with the collection of restitution or other financial obligations that may be imposed upon him, the defendant agrees as follows:

      a.      The defendant agrees to fully disclose all assets in which he has any interest or over which he exercises control, directly or indirectly, including any assets held by a spouse, nominee, or third party.   The defendant understands that

the United States Probation Office (USPO) will conduct a presentence investigation that will require the defendant to complete a comprehensive financial statement.   To avoid the requirement of the defendant completing financial statements for both the USPO and the government, the defendant agrees to truthfully complete a financial statement provided to the defendant by the United States Attorney's Office.   The defendant agrees to complete the disclosure statement and provide it to the USPO within the time frame required by the United States Probation officer assigned to the defendant's case.   The defendant understands that the USPO will in turn provide a copy of the completed financial statement to the United States Attorney's Office.   The defendant agrees to provide written updates to both the USPO and the United States Attorney's Office regarding any material changes in circumstances, which occur prior to sentencing, within seven days of the event giving rise to the changed circumstances.   The defendant's failure to timely and accurately complete and sign the financial statement, and any written update thereto, may, in addition to any other penalty or remedy, constitute the defendant's failure to accept responsibility under U.S.S.G § 3E1.1.

        b.     The defendant expressly authorizes the United States Attorney's Office to obtain his credit report.   The defendant agrees to provide

waivers, consents, or releases requested by the United States Attorney's Office to access records to verify the financial information, such releases to be valid for a period extending 90 days after the date of sentencing.  The defendant also authorizes the United States Attorney's Office to inspect and copy all financial documents and information held by the USPO.

        c.     Prior to sentencing, the defendant agrees to notify the Financial Litigation Unit of the United States Attorney's Office before making any transfer of an interest in property with a value exceeding $1,000 owned directly or indirectly, individually or jointly, by the defendant, including any interest held or owned under any name, including trusts, partnerships, and corporations.

## IMPOSITION OF SENTENCE

16.    The defendant understands that the District Court in imposing sentence will consider the provisions of the Sentencing Guidelines.  The defendant agrees that there is no promise or guarantee of the applicability or non-applicability of any Guideline or any portion thereof, notwithstanding any representations or predictions from any source.

17.    The defendant understands that this Agreement will not be accepted or rejected by the Court until there has been an opportunity by the Court to consider a presentence report, unless the Court decides that a presentence report is

unnecessary. The defendant understands that the Court will not accept an agreement unless the Court determines that the remaining charge adequately reflects the seriousness of the actual offense behavior and accepting the Agreement will not undermine the statutory purposes of sentencing.

## **WAIVER OF TRIAL RIGHTS**

18. The defendant understands that by pleading guilty he surrenders certain rights, including the following:

    a. If the defendant persisted in a plea of not guilty to the charges against him, then he would have the right to a public and speedy trial. The trial could be either a jury trial or a trial by a judge sitting without a jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the prosecution, and the judge all must agree that the trial be conducted by the judge without a jury.

    b. If the trial is a jury trial, the jury would be composed of twelve laypersons selected at random. The defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty. The jury would be instructed that the

defendant is presumed innocent, and that it could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt.

   c.  If the trial is held by a judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not he or she was persuaded of the defendant's guilt beyond a reasonable doubt.

   d.  At a trial, whether by a jury or a judge, the prosecution would be required to present its witnesses and other evidence against the defendant. The defendant would be able to confront those prosecution witnesses and his attorney would be able to cross-examine them. In turn, the defendant could present witnesses and other evidence on his own behalf. If the witnesses for the defendant would not appear voluntarily, the defendant could require their attendance through the subpoena power of the Court.

   e.  At a trial, the defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify.

  19.  The defendant understands that by pleading guilty, he is waiving all of the rights set forth in the preceding paragraph. The defendant's attorney has explained those rights to him, and the consequences of the waiver of those rights.

15

## **USE OF PLEA STATEMENTS**

20.     If, after signing this Agreement, the defendant decides not to plead guilty as provided herein, or if the defendant pleads guilty but subsequently makes a motion before the Court to withdraw his guilty plea and the Court grants that motion, the defendant agrees that any admission of guilt that he makes by signing this Agreement or that he makes while pleading guilty as set forth in this Agreement may be used against him in a subsequent trial if the defendant later proceeds to trial.   The defendant voluntarily, knowingly, and intelligently waives any protection afforded by Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence regarding the use of statements made in this Agreement or during the course of pleading guilty when the guilty plea is later withdrawn.   The *only* exception to this paragraph is where the defendant fully complies with this Agreement but the Court nonetheless rejects it. Under those circumstances, the United States may not use those statements of the defendant for any purpose.

21.     The defendant understands that the prosecution will apprise the Court and the United States Probation Office of the nature, scope and extent of the defendant's conduct regarding the charges against him, related matters, and any matters in aggravation or mitigation relevant to the issues involved in sentencing.

22.     The defendant and his attorney acknowledge that, apart from any written proffer agreements, if applicable, no threats, promises, agreements or conditions have been entered into by the parties other than those set forth in this Agreement, to induce the defendant to plead guilty.  Apart from any written proffer agreements, if applicable, this Agreement supersedes all prior promises, agreements or conditions between the parties.

23.     To become effective, this Agreement must be signed by all signatories listed below.

24.     Should the Court refuse to accept this Agreement, it is null and void

//

//

//

//

//

//

//

//

//

//

and neither party shall be bound thereto.

AGREED:

CLARE E. CONNORS
United States Attorney
District of Hawaii

_____  Dated: 9/1/23
KENNETH M. SORENSON
Chief, Criminal Division

_____  Dated: 9/1/23
WAYNE A. MYERS
W. KEAUPUNI AKINA
Assistant U.S. Attorneys

_____  Dated: 9-1-23
JASON FREDERICO
Defendant

_____  Dated: 9.1.2023
GARY SINGH, ESQ.
Attorney for Defendant

18